# Stewart *v.* Glade Mill Mutual Fire Insurance Company, Appellant.

*Insurance—Fire insurance—Principal and agent—Application—Negligence of agent—Mistake of company.*

Where a person permits a fire policy to expire, and a month thereafter signs an application for a new policy, and delivers it to the proper agent of the insurance company, and at the same time pays to the agent a survey fee, and the agent neglects to deliver the application to the company, and the company by mistake levies an assessment which both the insured and the agent thought was on the new policy whereas it was for a loss during the interval when there was no insurance, the company will be liable for the burning of the building described in the application, although no policy in fact had been issued to the applicant.

Argued May 12, 1909.  Appeal, No. 172, April T., 1909, by defendant, from judgment of C. P. Butler Co., Dec. T., 1907, No. 53, on verdict for plaintiff in case of R. W. Stewart v. Glade Mill Mutual Fire Insurance Company.  Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.  Affirmed.

Assumpsit on a contract of fire insurance.  Before GALBREATH, P. J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[But, it is contended, that inasmuch as the plaintiff's farm was within less than 100 feet of an oil well, it could not be insured under the provisions of the defendant company's constitution; that the defendant company cannot, by an estoppel, be held to have done that which it could not do directly; that no estoppel could arise inasmuch as the constitution of the company provides, in art. 2, sec. 6, "That no policy of this company will be issued to cover the loss on any property within one hundred and fifty feet," nor "one hundred feet from any drilling or producing oil or gas well."  And it also provides, as set forth in this article, "If at any time after a policy of this company has been issued, the conditions mentioned in this article are found to exist, the executive committee may, after five days' notice given the holder of such policy, cancel the same."  This provision of the constitution is not a prohibition, but a declaration of the company's policy not to place insurance on certain classes of property, with the provision that if at any time after a policy is issued, the conditions mentioned are found to exist, the executive committee may, after five days' notice, cancel the policy.  But, whatever the force of the provision of the constitution, that provision contained a self-imposed limitation or restriction which the company making it could waive.  The executive committee was the company for the purpose of placing insurance.  Its work was final and conclusive and was the act of the company in that respect, and if its action involved a waiver of the self-

imposed restriction of the company, we think it must be viewed as a waiver of the company of the constitutional provision. Its act, therefore, in levying an assessment on the plaintiff and sending him notice thereof must be taken as being the act of the company and a waiver of the self-imposed restriction or declaration of policy contained in the constitution of the company, and, if by that act the plaintiff was lured into a position of imagined security to his prejudice, the company cannot be heard to deny its act.] [1]

[So, gentlemen, the question is for your disposition or at least the principal inquiry, I think, will be, when you return to your jury room, whether or not, by the sending of this assessment the plaintiff was lured into a position of imagined security, which really did not exist. If he was, then, we think the defendant company is estopped from now saying that he did not have insurance in their company. If they, by their own act, have led him to believe that he was insured in their company, even if that action be the result of a mistake on their part, it was a mistake of their company, and not of the plaintiff, or if by any act they made him believe he was insured in answer to a proposition submitted for insurance and which was in their possession, then, we think, under these circumstances, the company would be estopped from setting up the fact that it had not issued a policy in this case and would be estopped from saying the plaintiff did not have insurance in the defendant company. An estoppel may arise either by silence when there is a duty to speak, which can only be the case where the party sought to be estopped has knowledge or information which calls upon him to speak, or without such knowledge by some positive word or act which tends to encourage or mislead another and does so encourage and mislead him to his injury by luring him into a position of imagined safety or security. Now, the kind of estoppel that is claimed here is of the latter class. That is, if the defendant company by a positive act in sending this notice of assessment to plaintiff, encouraged plaintiff to believe and misled him into believing that he had insurance in the defendant company, although the policy had not yet been received by him.

So, gentlemen, if you find that the plaintiff was so misled into a position of imagined security on that account, then, we say to you by virtue of this assessment, the defendant company is now estopped from saying that he did not have insurance, and, in that event, it would be your duty to find a verdict for the plaintiff for the amount of his claim, which is $1,200, which would bear interest from the time of the fire, December 8, 1906. If you find, however, that he was not lured into a false position, then, gentlemen, there can be no estoppel.] [2]

Defendant presented these points:

3. It is in evidence that the application of the plaintiff for insurance with the defendant company was made on November 2, 1906, and the property of the plaintiff was destroyed by fire on the morning of December 8, following; that an assessment having been made by the executive committee, the secretary of the company sent notice of the assessment to the plaintiff on or about November 21, 1906; that this assessment was of two mills upon the face of the policies, and the assessment so sent to plaintiff was for $1.80, which would be two mills upon a policy of $900, being the amount of a former policy in the company held by the plaintiff, but which had expired shortly before November 2, 1906; that the assessment was not made upon the policy in suit but upon the former policy upon the mistaken belief upon the part of the secretary that the former policy was still in force; that the secretary had no knowledge of the plaintiff's application for a new policy at the time he mailed the assessment to the plaintiff; that after the fire the plaintiff, on the same day of the fire, sent the amount of the assessment to the treasurer of the defendant company, the money reaching the treasurer late that evening, being a Saturday; that the treasurer had no knowledge of the application of the plaintiff for insurance or of the fire until that evening; that it was not until the morning of December 10 that the treasurer had knowledge that the company had not received the application for insurance, when he was leaving home to attend to the business of the company; that when the treasurer returned to his home on December 12, he returned

the assessment to the plaintiff, who then received it; that the application for insurance, though taken by the agent of the company on November 2, was not sent in to the company until December 10, after the fire, which was the first information the executive committee had that the application had been made; that the agent taking the application mailed it to the secretary of the company on December 10, 1906, and on December 13, it was returned by the secretary to the agent; that under the by-laws of defendant company the executive committee was not permitted to accept the application or issue the policy; that the by-laws required at least two of the executive committee, composed of the president, secretary and treasurer, to approve the application, which was never done; that the plaintiff, upon receiving the assessment without the policy was put upon inquiry as to why the policy had not been issued to him, which inquiry he could readily and speedily have made, but did not make. In addition to this, it has not been shown that the plaintiff relied upon the assessment as an acceptance of his application for insurance and was injured thereby. Under these undisputed facts the defendant company is not estopped from setting up as a defense in this case that the company never did agree with the plaintiff to accept his application of November 2, for insurance, and never did agree to insure him. *Answer:* That is refused. [4]

5. Under all the facts in this case, there can be no recovery by the plaintiff, and the verdict must be for defendant. *Answer:* That is refused. [5]

Verdict and judgment for plaintiff for $1,338. Defendant appealed;

*Errors assigned* among others were (1, 2, 3, 4, 5) above instructions, quoting them.

*T. C. Campbell,* for appellant.—The secretary had no authority to insure plaintiff or to assess him: Powell's App., 98 Pa. 403; Twelfth St. Market Co. v. Jackson, 102 Pa. 269; Baltimore & Ohio Employee's Relief Assn. v. Post, 122 Pa. 579; Worthington v. Ry. Co., 195 Pa. 211; Louchheim v. B. & L. Assn., 25 Pa. Superior Ct. 325.

The assessment being unauthorized and the company having received no benefit from it, there is no estoppel: Millward-Cliff Cracker Co.'s Est., 161 Pa. 157; Presbyterian Board v. Gilbee, 212 Pa. 310; Pannebaker v. R. R. Co., 219 Pa. 60.

The assessment was made by mistake. It was made without knowledge of the previous application for insurance by plaintiff. As a ratification of the act of the agent it was not binding upon the company, having been made without full knowledge of the facts: Tanney v. Tanney, 159 Pa. 277; Bangor, etc., Ry. Co. v. Slate Co., 203 Pa. 6; Sword v. Reformed Congregation, 29 Pa. Superior Ct. 626; Bigelow v. Ballerino, 111 Cal. 559 (44 Pac. Repr. 307); Byer v. Healy, 84 Iowa, 1 (50 N. W. Repr. 70); Seattle v. Liberman, 9 Wash. 276 (37 Pac. Repr. 433).

The assessment did not relieve the plaintiff of the duty of making inquiry. He was not justified in relying upon the assessment as evidence that the defendant company had accepted his application and that his property was then insured: Cuttle v. Brockway, 32 Pa. 45.

To constitute an estoppel by matter in pais, it must appear that the party setting up the estoppel will be injured by allowing the truth of the admission to be disproved: Eldred v. Hazlett, 33 Pa. 307; Brubaker v. Okeson, 36 Pa. 519.

*John R. Henninger,* for appellee.—An estoppel will arise either by silence when it is a duty to speak or by some positive word or act or representation which tends to encourage or mislead another and does so encourage or mislead him to his injury, either by causing him to act or by causing inaction: Sullivan v. Colby, 71 Fed. Repr. 460; Logan v. Gardner, 136 Pa. 588.

The Supreme Court of this state in Chapman v. Chapman, 59 Pa. 214, and restated in Putman v. Tyler, 117 Pa. 570, on page 586, states the principle contended for in these words: "Positive acts tending to mislead one ignorant of the truth, and which do mislead him to his injury are grounds of estoppel, though the party estopped was ignorant of his rights:" Mentz v. Ins. Co., 79 Pa. 475; Ins. Co. v. May, 2 W. N. C. 43.

The evidence clearly indicates that a policy would have been issued to the plaintiff had it not been for the fire; it therefore follows that plaintiff's property was uninsured at that time on account of defendant's negligence and the loss, therefore, is the result of the defendant's negligence, for which it is responsible: Boyce v. Union Dime Permanent Loan Assn., 218 Pa. 494; Cunningham v. First National Bank, 219 Pa. 310; New York Tartar Co. v. French, 154 Pa. 273.

OPINION BY ORLADY, J., March 3, 1910:

The plaintiff had a barn insured in the defendant company from 1891 to 1906. A short time prior to the expiration of his last policy, his attention was called to the fact that his policy was about expiring, and W. J. Burton, the authorized agent of the company "for the purpose of receiving applications" solicited a renewal application. The plaintiff was an old man and confined to the house, and for some reason did not notice that his policy had expired until October 29 (a full month after the policy had expired), when he sent for Burton, who on November 2, 1906, received from the plaintiff an application for new insurance against loss or damage by fire in the defendant company for the sum of $1,200, for the term of five years, following the second day of November, 1906. On the printed blank furnished by the company it is required that a policy and survey fee of $2.00 is to be paid by the applicant when he signs the application and this requirement was complied with by the plaintiff paying to Burton the stipulated sum of $2.00. On the same paper, under questions to be answered by the agent, are the following: "1. Have you examined the property on which insurance is wanted. Answer: Yes. 2. Are the answers by the applicant all correct so far as you can discern? Answer: Yes. Signed: W. J. Burton, Agent."

The defendant is a mutual fire insurance company and by a section of its constitution, it is provided, "that the Board of Directors shall appoint suitable persons to act as agents for this company in receiving applications for insurance, and in making a survey of the property, who shall serve for a period

of three years. It shall be the duty of the agent of the company to make a correct examination and survey of the property on which insurance is desired, and shall certify the same to the executive committee, which certificate shall answer all questions in the form of application furnished by the board, and shall have the applicant sign the same."

The defendant's agent was familiar with the premises, and while there had been some question as to the location of an oil well near to the barn, it was treated both by the plaintiff and by the company's agent as having been disposed of after notice to and examination by the defendant as not objectionable. It was further provided by the rules of the company that when the application was signed, and the plaintiff paid the $2.00, one-half of that sum was to be retained by the agent for his services, and the other half belonged to the company, and would be accounted for by the agent in an annual statement. About two weeks after signing the application, the plaintiff became anxious in regard to his insurance and wrote to the agent making inquiry in regard to it, and wanted to know why he had not received his policy, and the agent assumed that the plaintiff would receive his policy direct from the company about the same time the inquiry had been made by the plaintiff and that it was not necessary for him to make a direct reply to the plaintiff's letter. Following this, about November 20, the plaintiff received a postal card dated November 12, 1906, as follows:

"Dear Sir:—Your assessment to the Glade Mill Mutual Fire Insurance Company is $1.80. You will pay the same to the Treasurer, A. Kilpatrick, within thirty days. The treasurer will be at the following places to collect: Callery, December 3d; Mars, December 4th; Maharg, December 10th. Signed by the president and the secretary."

Knowing that his former policy had expired on September 28, and that his application for new insurance had been signed on November 2, the plaintiff assumed that this assessment was on the new policy he desired to have issued to him. On December 8, the property was totally destroyed by fire, and it is conceded that it was of greater value than the amount

mentioned in the policy. Burton, the agent, was present at the plaintiff's house, on the day of the fire and after examining the assessment notice, which had been received by the plaintiff accepted from him the assessment of $1.80 mentioned therein he also assumed that it related to the new policy, and the same day forwarded it to the company, with a statement that it was from the plaintiff. On the same day he wrote the following letter to the home office of the company:

"Sir:

"You will find enclosed check for $6.00 for my insurance and R. W. Stewart, $1.80 and $4.20 mine, total $6.00. Would like to know what this assessment is for, and R. W. Stewart's policy which I sent a month or more ago, he states he has not got, and his barn was burned last night at two o'clock in the morning."

It developed subsequently that Burton had never forwarded the application to the company, and that the assessment was erroneously made by the proper officer of the company, in assuming that the old policy was still in force, and that this assessment was based on it. On December 12, the defendant returned $1.80, giving as its reason, 1st. Because the policy had expired September 28, 1906 at noon, and no assessment could legally be made on it. 2d. Because the company sent a man to measure the distance from the barn to the well, and he reported that the well was less than the required distance, and he told you then that the well was much within the limit and would make the policy void. No return was made of "the dollar policy and survey fee" which was retained by the agent of the company.

It is not disputed that the company through its authorized agent knew of the exact location of the oil well on July 4, and an investigation was then made of the situation, and no action was taken by the company to cancel the policy or to give any notice to the defendant of that fact being objectionable. The application was made on a blank furnished by the company, and the certificate of the duly authorized agent was attached thereto. The policy and survey fee were paid by the plaintiff on November 2, 1906, and after that date the plaintiff knew

nothing of the matter until the fire occurred on December 8, when he paid the assessment under the notice issued by the company, and within the time fixed by its terms. Under the undisputed facts, Burton was the proper person to represent the company, and he did act for it within the scope of his authority. His possession of the application was the possession of the company; the sending of the assessment notice was a positive act, and under the finding of the jury encouraged the plaintiff to believe, and actually misled him into believing, that he had a valid insurance in the defendant company, although his policy had not been received by him. This condition resulted, not from any act of omission on the part of the plaintiff which tended in the most remote way to mislead or deceive the company, but was due entirely to the oversight of the agent in not forwarding the application to the home office of the company in due time, when if it had been promptly acted upon, and even rejected, for the reasons subsequently given, he would have had ample time to secure other insurance on his property. The added mistake of the company in sending the notice of the assessment (which it is admitted could not have been legally made on the policy which expired September 28), reasonably misled him to believe that he had valid insurance. The local agent, who was familiar with the company's methods, was of the same opinion. The case was fairly submitted to the jury as follows: "If by their own act they led him to believe that he was insured in their company, even if that act be the result of a mistake on their part, it was a mistake of the company and not of the plaintiff. If by their act they made him believe that he was insured in answer to a proposition submitted for insurance which was in their possession, then, we think, under these circumstances the company would be estopped from saying to the plaintiff that he did not have insurance in the defendant company." The question was purely one of fact and was properly submitted to the jury. It was held in Ripka v. Mutual Fire Insurance Company, 36 Pa. Superior Ct. 517, "No estoppel can arise either from the company's failure to act upon and formally reject the application or from the failure of its soliciting agent to forward it to the company, where,

before either of the things can be done the property is totally destroyed by fire and the soliciting agent immediately tenders to the applicant the policy fee he had paid." We feel that the facts of this case are very materially different, in that the neglect of the agent in forwarding the application was supplemented by the act of the company in sending the assessment notice, which reasonably induced the plaintiff to believe that his application had been accepted, and that his policy was in force.

There was no suggestion that the plaintiff did not act in good faith, and the defense of the company is entirely founded upon the mistake of its soliciting agent, coupled with the equally important mistake of its home office, neither of which should the plaintiff be held responsible for, nor should he suffer loss by reason thereof.

The assignments of error are overruled and the judgment is affirmed.